## STATE v. KARTUS.

### 3 Div. 767.

Court of Appeals of Alabama.
May 21, 1935.

Rehearing Denied June 4, 1935.

A. A. Carmichael, Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

Sternfeld & Lobman, of Montgomery, for appellee.

· SAMFORD, Judge.

The action was on the common counts to recover license claimed to be due under section 361, schedule 51, of the revenue laws, Gen. Acts 1919, pp. 395, 411. There are some pleas and demurrers raising the question of the constitutionality of the act levying the license which will be adverted to later.

After rulings on pleas and demurrers thereto, the cause proceeded on the general issue, and the following agreed statement of facts:

"It is agreed between Plaintiff and Defendant that the following is a true statement of facts in this case for the determination of said cause by the Court, subject to the legal exceptions hereinafter set forth.

"1. That the defendant is a resident of the State of Alabama and City of Montgomery and is engaged in the retail mercantile business in said City of Montgomery, Alabama.

"2. That on to-wit, the 9th day of March, 1932, Montgomery Cash Store, which was then operated by a corporation in which the defendant was not in any way interested, was adjudged a bankrupt in the United States District Court at Montgomery, Alabama, and said business was sold by the Trustee in bankruptcy to one J. H. McCormick; the defendant who had been formerly engaged in the retail business at Bessemer, Alabama, since the year 1919 was in Montgomery for the purpose of acquiring a business and purchased the assets of the Mont-gomery Cash Store from the said J. H. McCormick and entered into and negotiated a lease with the landlord for said premises from, to-wit, March 9, 1932, until September 30, 1933, and continued to operate the said business at the same location, namely, 24 North Court Street, Montgomery, Alabama. And the defendant has continued to operate a retail store at said location ever since March 9, 1932, and still continues to operate the same.

"3. That thereafter, during the months of March and April, 1932, the defendant in the conduct of and as an incident to his said business at No. 24 North Court Street, advertised in the daily newspapers at Montgomery, Alabama, in words and figures as shown by copy thereof, marked Exhibit 'A,' specifically referred to and made a part of this agreed statement of facts; that defendant proceeded to sell said goods at retail at said location, No. 24 North Court Street, Montgomery, Alabama, in accordance with such advertisement; that after the appearance of said advertisement, the License Inspector of Montgomery County, Alabama, demanded of this defendant that he take out a license as provided by the Act set out in the complaint herein, and was duly and legally cited to show cause why he should not do so, and the defendant has refused to pay said license on the grounds that he is not liable under said Act.

"4. That the Ad Valorem taxes due the State of Alabama and County of Montgomery upon the assets located in said store have been paid and the property belonging to said business has been assessed for the year 1932; that no State or County License has been issued to the defendant to conduct the said business as none has ever been required by the laws of the State unless defendant is liable for license claimed in this suit under the facts herein set out; that he has paid to and secured from the City of Montgomery, Alabama, for the year 1932 and prior to said advertisement and the time of sale hereinabove set forth, a license to do a regular retail mercantile business at said location. That he is not now and never has been engaged in the business of advertising and conducting bankrupt sales, except as disclosed herein.

"Ordered Sold! Bought The Entire Bankrupt Stock of the former Montgomery Cash Store. Come today! Come Every day! Stock and Fixtures Must be Sold Regardless of Price!

"Good Grade Outing 2¢ yd. 75¢ Heavy Blue Work Shirts 29¢. Curlee $25 Men's Suits $4.99. Ladies' 25¢ Silk H'kerchiefs 1¢ ea. Ladies' Silk Dresses Values up to $10 99¢. Men's Dress Shirts Up to $2.50 Values 47¢. Ladies Silk Hose 6¢ pr. Ladies $1 Wash Dresses 25¢. Men's Shoes Up to $5 Values Genuine Calfskin $1.98. Yard Wide Heavy Sea Island Sheeting 3½¢ yd. Ladies' Felt Hats up to $5 Values 25¢. Children's Shoes Up to $1.50 Values 25¢ pr. While They Last. You'll have to hurry. Remember, this is only a part of the huge stock we have sacrificed. Come and Bring Your Friends. Former Montgomery Cash Store. 24 North Court St. Montgomery, Ala. J Mar 31/32"

So far as is necessary here to quote, the section under consideration reads as follows: "Before any person, firm or corporation shall sell or be engaged in the business of selling goods, wares, merchandise, or other personal property, *such sales being advertised as bankrupt,*" etc. (italics ours), such person shall do certain things and obtain a license therefor under the terms and requirements of the section.

It is perfectly clear that the defendant was engaged in the business selling goods, wares, and merchandise, and that such goods, wares, and merchandise constituted the bankrupt stock formerly belonging to Montgomery Cash Store and which had been purchased from the trustee in bankruptcy.

The only question then is, Did the defendant advertise the sale of such goods, wares, and merchandise as being a bankrupt stock? As to this, we entertain no doubt. The advertisement clearly is a studied effort to avoid the statute and at the same time to let the public know, in no uncertain terms, that he had for sale the entire bankrupt stock of the former Montgomery Cash Store and at greatly reduced prices. The law will not give countenance to such evasions or subterfuges. The case of Jones v. State, 25 Ala. App. 410, 149 So. 855, in no way conflicts with the holding in the instant case and its differentiation is apparent.

Being of the opinion that the schedule, under which this prosecution is brought, is in violation of the Constitution, the writer propounded to the Supreme Court the following inquiry:

"To Hon. John C. Anderson, Chief Justice, and Associate Justices:

"In the above-entitled cause, the validity of schedule 51, § 361, Gen. Acts 1919, pp. 282, 395, 411, is brought in question. It is insisted that the above schedule is in violation of sections 1 and 35 of the Constitution of Alabama and of the Fourteenth Amendment to the Constitution of the United States.

"I am of the opinion that the schedule is void in that it is an attempt to interfere with the citizen in the manner in which he may conduct a perfectly legitimate business, and as authorities I call your attention to People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53, 94 N. E. 1065, 35 L. R. A. (N. S.) 1079; City Counsel of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Alabama Consol. Coal & Iron Co. v. Herzberg, 177 Ala. 248, 59 So. 305.

"This court is unable to reach an unanimous conclusion on the above and the question is certified to you."

To this inquiry reply was made by the Supreme Court, speaking through KNIGHT, J., in a very exhaustive opinion in which it is held that schedule 51, § 361, Gen. Acts 1919, pp. 282, 395, 411, is a valid enactment and does not violate sections 1 or 35 of the Constitution of Alabama or the Fourteenth Amendment to the Constitution of the United States. State v. Kartus, 162 So. 533. By that holding this court is bound.

It follows from the foregoing that the trial court erred in rendering judgment for defendant and the judgment is reversed and one will here be rendered for the plaintiff for the amount sued for, interest and costs.

Reversed and rendered.

BRICKEN, Presiding Judge (dissenting).

The validity of schedule 51, § 361, Gen. Acts 1919, pp. 282, 395, 411, having been ascertained and determined by the Supreme Court, the only question for decision now is whether or not appellee, in this case, comes within the terms of the statute, supra, under the agreed statement of facts upon which the case was tried in the court below. The trial judge, the Honorable Walter B. Jones, of the circuit court of Montgomery county, held that he did not, and in this I think the trial judge was correct, as it is my opinion, under said agreed statement of facts, it clearly ap-

pears that the defendant, appellee here, was not engaged in the business of conducting bankrupt sales, advertised as such, as contemplated by said statute and therefore was not subject to the payment of this particular license for which this suit was brought. It would, in my opinion, require a constrained construction to hold otherwise.

The statute in question is penal in nature and must, therefore, under the law, receive a strict construction against the state, and construed liberally as to the tax payer.

I am of the opinion that the principles of law announced in the case of Jones v. State, 25 Ala. App. 410, 149 So. 855, certiorari denied 227 Ala. 400, 149 So. 857, are applicable to the case at bar.

The facts show that the appellee was a resident of the city of Montgomery and engaged in the retail mercantile business in the city of Montgomery, Ala.; that he had been engaged in the retail business in Bessemer, Ala., since the year 1919; that he entered into a lease for the premises formerly occupied by the Montgomery Cash Store, and after the lease was entered into and negotiated, he bought from one J. H. McCormick the stock of merchandise and fixtures formerly belonging to the Montgomery Cash Store and which had been previously sold to McCormick under order of the United States District Court, in bankruptcy, at Montgomery, Ala.; that the appellee has continuously been engaged in the retail business at such storehouse in Montgomery, Ala., from March 9, 1932 and still continues to operate a retail merchandise store at said premises. Further, that as an incident to his said business at No. 24 Court street, he advertised in the mode and manner set forth in the agreed statement of facts. (Exhibit A). From these facts, it can readily be seen that appellee was not in any way engaged in the business of selling goods, etc., such sales being advertised as bankrupt, insolvent, insurance, assignee, trustee, etc., but was engaged in the retail business and wished to dispose of a stock of merchandise that had been bought from McCormick, and by McCormick through the bankrupt court. He had every right to advertise this merchandise so that it might be disposed of readily and promptly and make room for additional and new merchandise which was to go into the business. He, at the time, had a legitimate right to advertise and sell the old fixtures which he had bought, in order that new fixtures or such fixtures as he might desire, could be placed in the premises.

A state and county license for doing a mercantile business was not required. Appellee did procure a license from the city of Montgomery for the year 1932 to do a retail business; he entered into a lease from March 9, 1932, to September 30, 1933, showing that he was not an itinerant to transient; that he was and intended to be a legitimate retail merchant in the city of Montgomery, and in further corroboration it is shown by the statement of facts that he was continuously in business from then and until now in the regular retail merchandise business. On March 31st, several weeks after the execution of the lease and after his city license had been paid, the advertisement attached to the agreed statement of facts was inserted in the newspapers.

The principle laid down in Karthaus v. State, 19 Ala. App. 136, 95 So. 563, are applicable here. In that case the court said: "Under the principles announced in the Braxton Case, supra [16 Ala. App. 476, 79 So. 150] it clearly appears that the appellant did not engage in or carry on the business of auction sales as contemplated by law, and it affirmatively appears that 'selling at auction' was not his business. The one isolated act referred to in the agreed statement of facts was a mere incident in the conduct of his business as a retail jewelry dealer, and, as stated therein, as executor of the estates of his deceased partners." See, also, Carruth v. State, 24 Ala. App. 158, 132 So. 65.

I am also of the opinion that the advertisement complained of does not come within the terms of the statute, supra. This appears to be conceded by the appellant; but it is insisted that it is within the spirit of the legislative intent. As stated, this is a penal statute, therefore the intent of the Legislature must be found in the words and phrases used in the statute. The advertisement itself merely informs the public the source from where the goods were acquired, and in no manner advertises that said goods or merchandise would be offered or sold at bankrupt sale. The mere fact that the advertisement contains the source from which the merchandise was obtained does not bring it within the terms of the statute. As aptly insisted by appellee, "Suppose, for example, the stock advertised had been sold under attachment by the landlord for rent, and the defendant's ad-

450 `

vertisement had read, 'Bought at Foreclosure Sale Entire Stock Montgomery Cash Store' etc.,—could it be contended that this was within the terms of the Statute? No more so, setting forth of the truth that the stock was a former bankrupt stock of the Montgomery Cash Store."

This case was properly tried and determined in the court below and the judgment should be affirmed.

I do not concur in the conclusion reached and announced in the majority opinion, nor in any of the reasons upon which such conclusion is based, therefore my dissent.